**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

**UWAIS SYED,**                                    CASE NO. 21-cv-6000

        **Plaintiff,**

     **v.**

**S&P PHARMACY CORP., SHAZIA**
**PHARMACY INC., NATHAN'S**
**PHARMACY, SAUL'S PHARMACY AND**
**SURGICAL SUPPLIES, APNI PHARMACY**
**CORP., WATTO CORPORATION,**
**MEDICINE SHOPPE PHARMACY,**
**PERVEZ SIDDIQUI, SHAZIA BIBI, and**
**SHAHBAZ WATTO,**

        **Defendants.**
-----------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**


JOSEPH & KIRSCHENBAUM LLP
Michael DiGiulio
32 Broadway, Suite 601
New York, NY 10004
212-688-5640

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... i

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     STATEMENT OF FACTS ................................................................................................ 2

   A.   The Parties ...................................................................................................................... 2

   B.   Plaintiff's Wage and Hour Allegations ......................................................................... 3

   C.   Plaintiff's Retaliation Allegations ................................................................................. 4

   D.   The Corporate Defendants Constitute a Single Employer ................................................. 5

III.    ARGUMENT ................................................................................................................... 6

   A.   The FAC Adequately Pleads That All of the Corporate Defendants Were Plaintiff's
        Employer Under the Statutes ........................................................................................ 8

        i.   The Single Integrated Employer Doctrine ................................................................. 8

        ii.  The FAC Adequately Pleads That All of the Corporate Defendants Constitute a
             Single Integrated Employer ...................................................................................... 11

   B.   The FAC Adequately Pleads That The Individual Defendants Were
        Plaintiff's Employers Under the NYLL and FLSA ...................................................... 17

   C.   The FAC Sufficiently States A Claim For Relief For Overtime Violations Under the
        FLSA .............................................................................................................................. 18

        i.   The Learned Professional Exemption Does Not Apply to Plaintiff's Employment. .... 19

        ii.  The Highly Compensated Employee Exemption Does Not Apply to Plaintiff's
             Employment ............................................................................................................... 21

   D.   The FAC Adequately Pleads NYLL § 195 Claims Against All Defendants .................... 22

   E.   The FAC Sufficiently States A Claim For Relief For Retaliation Under the FCA and
        NYFCA Against All of the Corporate Defendants ...................................................... 22

IV.     CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Anani v. CVS RX Servs.*, Case No. 9-cv-5535,
    2011 U.S. Dist. LEXIS 57625 (E.D.N.Y. May 23, 2011) .............................. 19,21

*Arista Records LLC v. Does*, 604 F.3d 110 (2d Cir. 2010).......................................... 7

*Armata v. Unique Cleaning Servs., LLC*, No. 13 CV 3625,
    2015 U.S. Dist. LEXIS 180995 (E.D.N.Y. Sept. 14, 2015)........................... 9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7

*Ayala v. Your Favorite Auto Repair & Diagnostic Center, Inc.*,
    No. 14 CV 5269, 2016 U.S. Dist. LEXIS 127425
    (E.D.N.Y. Sept. 19, 2015)................................................................................ 9

*Beckles-Canton v. Lutheran Soc. Servs. of N.Y.,* Case No. 20-cv-4379,
    2021 U.S. Dist. LEXIS 135371 (S.D.N.Y. July 20, 2021) ............................. 23,24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 7

*Berrezueta v. Royal Pastry Shop, Inc.*, Case No. 12-cv-4830
    2014 U.S. Dist. LEXIS 102749 (E.D.N.Y. July 28, 2014) ............................ 17

*Bowrin v. Cathoilc Guardian Soc'y*, 417 F. Supp. 2d 449 (S.D.N.Y. 2006).............. 17

*Bravo v. Established Burger One LLC*, No. 12 Civ. 9044,
    2013 U.S. Dist. LEXIS 146237 (S.D.N.Y. Oct. 8, 2013) .............................. passim

*Cavalotti v. Daddyo's BBQ, Inc.*, Case No. 15-cv-6469,
    2018 U.S. Dist. LEXIS 154918 (E.D.N.Y. Sept. 8, 2018).............................. 20

*Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 CV 5735,
    2017 U.S. Dist. LEXIS 92149 (S.D.N.Y. June 15, 2017)............................... 9

*Chen v. Major League Baseball*, 798 F.3d 72 (2d Cir. 2015)..................................... 19

*Chen v. TYT East Corp.*, No. 10 Civ. 5288,
    2012 U.S. Dist. LEXIS 166557 (S.D.N.Y. Mar. 21, 2012) ........................... 10

*Chimbay v. Pizza Plus at Staten Island Ferry, Inc.*, No. 15 CV 2000,
    2016 U.S. Dist. LEXIS 32257 (S.D.N.Y. Mar. 14, 2016) .............................. 9,13,14

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995) ............................ 9

*DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)................................7

*Donetto v. S.A.R.L. De Gestion Pierre Cardin*, 787 N.Y.S.2d 677
    (N.Y. Sup. Ct. N.Y. County 2004) ................................................................9

*Ferrara v. Oakfield Leasing, Inc.*, 904 F. Supp. 2d 249 (E.D.N.Y. 2012) .................12,13, 15

*Finkel v. Frattarelli Brothers, Inc.*, No. 05 CV 1551,
    2008 U.S. Dist. LEXIS 46973 (E.D.N.Y. June 17, 2008) ..............................14

*Flanigan v. Vulcan Power Group, LLC*, No. 14-4444,
    2016 U.S. App. LEXIS 4680 (2d Cir. Mar. 15, 2016)....................................17

*Flores v. 201 West 103 Corp.*, No. 16 Civ. 2233,
    2017 U.S. Dist. LEXIS 91654 (S.D.N.Y. June 14, 2017)...............................9,14

*Garcia v. Aspira of N.Y., Inc.,* Case No. 7-cv-5600,
    2011 U.S. Dist. LEXIS 41708, (S.D.N.Y. April 13, 2011) ............................23

*Garcia v. Chirping Chicken NYC, Inc.*, No. 15 CV 2335,
    2016 U.S. Dist. LEXIS 32750 (E.D.N.Y. Mar. 11, 2016)..............................8,9

*Ghaffar v. Willoughby 99 Cent, Inc.*, No. 09 CV 509,
    2010 U.S. Dist. LEXIS 88888 (E.D.N.Y. Aug. 27, 2010).............................14

*Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016) ......................................7,22

*Gomez v. Natl. Fin. Network, Inc.*, Case No. 20-cv-1968,
    2021 U.S. Dist. LEXIS 145513 (E.D.N.Y. Aug. 2, 2021).............................21

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010).....................................7,20

*Heras v. Metro. Learning Inst.*, No. 19 CV 2694,
    2021 U.S. Dist. LEXIS 3434 (E.D.N.Y. Jan. 7, 2021) ..................................18

*Jewel Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America*,
    325 U.S. 161 (1945)........................................................................21

*Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14 (E.D.N.Y. 2020) ...........................17

*Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363 (S.D.N.Y. 2014) ................................9

*Lawrence v. Int'l Bus. Mach. Corp.*, Case No. 12-cf-8433,
    2017 U.S. Dist. LEXIS 120804 (S.D.N.Y. Aug. 1, 2017)..............................10

*Li v. Ichiro Sushi, Inc.*, No. 14 CV 10242,
    2016 U.S. Dist. LEXIS 41894 (S.D.N.Y. Mar. 29, 2016) ............................... 9

*Liu v. NY Neuromodulation Med., P.L.L.C.*, Case No. 20-cv-5000,
    2021 U.S. Dist. LEXIS 146044 (S.D.N.Y. Aug. 4, 2021) ............................. 19

*Lihli Fashions Corp., Inc. v. NLRB*, 80 F.3d 743 (2d Cir. 1996) ............................... 8, 9

*Lipka v. Advantage Health Group, Inc.*, Case No. 13-2223,
    2013 U.S. Dist. LEXIS 134435 (D. Kan. Sept. 20, 2013) .............................. 10

*Lopez v. Pio Pio NYC, Inc.*, No. 13 CV 4490,
    2014 U.S. Dist. LEXIS 67121 (S.D.N.Y. May 15, 2014) .............................. 10,11,16

*Marin v. APU Foods Corp.*, No. 17 CV 3224,
    2018 U.S. Dist. LEXIS 31891 (E.D.N.Y. Feb. 26, 2018) .............................. 11,16

*Merritt v. Mt. Laurel Chalet, Inc.*, 96 F. Supp. 3d 801 (E.D. Tenn. 2015) ................. 10,11

*Nuriddinov v. Masada III, Inc.*, No. 15 CV 5875,
    2017 U.S. Dist. LEXIS 116357 (E.D.N.Y. July 24, 2017) ............................. 9

*Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290 (E.D.N.Y. 2016) ............ 18,19

*Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091,
    2013 U.S. Dist. LEXIS 35808 (S.D.N.Y. Feb. 28, 2013) .............................. 10

*Picard v. Bigsbee Enters., Inc.*, No. 1984-13,
    2017 N.Y. Misc. LEXIS 2052 (Sup. Ct. Albany County May 23, 2017) ........ 9,13,22

*Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549
    2014 U.S. Dist. LEXIS 60836 (S.D.N.Y. Apr. 24, 2014) .............................. 7

*Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549,
    2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014) .............................. 7

*Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502 (S.D.N.Y. 2013) .................. 10

*Shi v. Moog Inc.*, Case No. 19-cv-339v,
    2019 U.S. Dist. LEXIS 160235 (W.D.N.Y. Sept. 19, 2019) .......................... 10

*Siji Yu v. Knighted LLC*, Case No. 15-cv-9430,
    2019 Dist. LEXIS 80419 (S.D.N.Y. May 13, 2019) ........................................ 21

*Thompson v. Quorum Health Resources, LLC*, Case No. 6-cv-168,
    2007 U.S. Dist. LEXIS 72376 (W.D. Ky. Sept. 27, 2007) ............................. 10

*United States ex rel. Chorches v. Am. Response, Inc.*, 865 F.3d 71 (2d Cir. 2017) .... 23

*United States ex rel. Hefner v. Hackensack University Medical Center*,
    Case No. 1-cv-4078, 2005 U.S. Dist. LEXIS 36427 (D.N.J. Dec. 23, 2005) .. 10

*Walter v. Queens Coll.*, 390 F. Supp. 3d 382, 393 (E.D.N.Y. 2019) .......................... 2, 8, 13

*Walling v. Youngerman Reynolds Hardwood Co.*, 325 U.S. 419 (1945) ................... 18

*Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552 (S.D.N.Y. 2015) ........................ 9, 11

*Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009) ........................ 19

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003) ......................................... 11

*Zuccarini v. PVH Corp.*, No. 151755/15,
    2016 N.Y. Misc. LEXIS 673 (Sup. Ct. N.Y. County Feb. 29, 2016) ............. 8, 9

**Statutes, Rules, and Regulations**

29 U.S.C. § 207 ............................................................................................................ 18

29 C.F.R. § 506(a)(1) .................................................................................................. 19

29 C.F.R. § 541.300(a)(2) ........................................................................................... 19

29 C.F.R. § 541.602(a) ................................................................................................ 20

Fed. R. Civ. P. 8(d) ..................................................................................................... 21

Fed. R. Civ. P. 8(a) ..................................................................................................... 21

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ....................................................... 18

N.Y. Lab. L. § 195 ...................................................................................................... 22

## I.    PRELIMINARY STATEMENT

Plaintiff's First Amended Complaint ("FAC") (Dkt. No. 16) states claims against all Defendants under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the False Claims Act ("FCA"), and the New York False Claims Act ("NYFCA"). Defendants' motion to dismiss claims against certain Defendants should be denied because the FAC adequately alleges that all the Defendants were Plaintiff's employers under the relevant statutes. The FAC pleads that all of the Corporate Defendants in this case constitute a single integrated employer, such that the corporations that did not directly employ Plaintiff can be held liable for all of the violations alleged in the FAC.

The FAC also adequately pleads that Defendants violated the FLSA by failing to pay Plaintiff the overtime compensation to which he was entitled. Notably, Defendants explicitly represented to the Court in a joint filing with Plaintiff that they would not move to dismiss on this issue and requested permission only to move on other issues, precisely because this issue is not appropriate for resolution on the pleadings. *See* Dkt. No. 14. Despite this (mis)representation, Defendants have now moved to dismiss Plaintiff's FLSA claim. Defendants' motion in this regard should be denied because the FAC plainly alleges that Plaintiff was paid by the hour, and the two FLSA exemptions that Defendants argue applied to Plaintiff only apply to employees who are paid on a salary basis.

It is clear that Defendants vigorously dispute the factual allegations in Plaintiff's complaint and that their motion is actually predicated on these factual disputes. This is telling and fatal to their motion to dismiss under FRCP 12(b)(6). Factual disputes must be resolved through the discovery process and later at trial, not at the motion to dismiss stage. Nevertheless, Defendants' motion papers are full of erroneous and unsupported facts and insinuations that are

completely irrelevant to the motion at hand, which must be decided based on the four corners of Plaintiff's amended complaint. While wrong, it is unsurprising that Defendants took this tack, as the FAC is well-pled, detailed, and provides a plethora of specific facts related to the Corporate Defendants' operations, Plaintiff's employment, and Plaintiff's termination that, if true, would easily support a finding of liability against all Defendants. The FAC is plainly sufficient to survive a motion to dismiss, and Defendants' motion should be denied.

## II.  STATEMENT OF FACTS

The following facts are taken from Plaintiff's FAC.[1] *See* Dkt. No. 16.

### A.  The Parties

Plaintiff Uwais Syed ("Plaintiff") worked as the Supervising Pharmacist at the Marhaba Pharmacy from approximately August 2018 to June 26, 2021. (FAC ¶ 17). In that role, he was responsible for verifying prescriptions, filling orders, and ensuring compliance with state and federal regulations. (FAC ¶ 52). Defendant S&P Pharmacy Corp. ("Defendant Marhaba") is a corporation that owns and operates the Marhaba Pharmacy where Plaintiff worked, located at 2029 Bath Avenue, Brooklyn, NY 11214. (FAC ¶ 6). Defendants Shazia Pharmacy Inc., Nathan's Pharmacy, Saul's Pharmacy and Surgical Supplies, Apni Pharmacy Corp., Watto Corporation, and Medicine Shoppe Pharmacy (collectively, "Pharmacy Defendants", and, collectively with Defendant Marhaba, "Corporate Defendants") are all corporations that own and operate various individual pharmacies throughout South Brooklyn. (FAC ¶¶ 7-12). Each of the

---

[1] Routinely and consistently throughout the Memorandum of Law in support of their motion to dismiss, Defendants fail to cite to the FAC, but instead assert unsupported, irrelevant, and erroneous facts. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("MOL") at 2-5 (Dkt No. 71-1). In this regard, Defendants are clearly misguided. At the motion to dismiss stage, the Court should not consider facts that are not alleged in the complaint, let alone unalleged facts that have no evidentiary support whatsoever. *See Walter v. Queens Coll.,* 390 F. Supp. 3d 382, 393-394 (E.D.N.Y. 2019) (declining to consider "materials outside the complaint" because "the Court must limit its analysis to the four corners of the complaint in deciding a motion to dismiss"). Because there are too many unsupported and irrelevant assertions scattered throughout their motion to rebut each one, Plaintiff respectfully requests that the Court disregard all of the unsupported factual assertions in their papers that do not cite to Plaintiff's FAC.

Corporate Defendants has an annual gross volume of sales in excess of $500,000. (FAC ¶ 13). Defendants Pervez Siddiqui, Shazia Bibi, and Shabaz Watto (collectively, the "Individual Defendants") own and operate all of the Corporate Defendants. (FAC ¶¶ 14-16).

The Individual Defendants each had authority to (1) hire and fire employees, including Plaintiff, at the Corporate Defendants' various pharmacies; (2) set the Corporate Defendants' employees' schedules and rates of pay, including Plaintiff's, and (3) write checks on behalf of the Corporate Defendants. (FAC ¶¶ 126-137). Defendant Siddiqui hired and fired Plaintiff. (FAC ¶ 126). Defendant Watto was the day-to-day manager at the Marhaba Pharmacy and was Plaintiff's direct supervisor. (FAC ¶¶ 127-137).

### B. Plaintiff's Wage And Hour Allegations

Plaintiff alleges that throughout his employment, Defendants paid him an hourly wage. (FAC ¶¶ 138-143). Specifically, from August 2018 to approximately the fall of 2020, Plaintiff was paid an hourly rate of $58.00 per hour, and from the fall of 2020 to the date of his termination on June 26, 2021, Plaintiff was paid an hourly rate of $60.00 per hour. (FAC ¶¶ 138-139). During his employment, Plaintiff routinely worked about 45 hours per week or more. Plaintiff normally worked five days per week, for nine hours each day from 11:00 am to between 8:00 and 8:30 pm. (FAC ¶ 140). Defendants did not pay Plaintiff one and a half times his normal rate of pay for hours worked over 40 per week. Specifically, from August 2018 to the fall of 2020, Plaintiff was paid $40.00 per hour for each hour worked over 40 hours in a week, and from the fall of 2020 to June 26, 2021, Plaintiff was paid $45.00 per hour for each hour worked over 40 hours per week. (FAC ¶¶ 142-143). Thus, Plaintiff alleges that Defendants paid him less than his regular rate of pay when they should have been paying him time and a half for the overtime worked. Plaintiff further alleges that Defendants did not provide him with written notice of his

3

pay rate and that his wage statements did not accurately reflect the hours he worked and the rate he was paid. (FAC ¶¶ 144, 165). As such, Plaintiff alleges violations of the FLSA and NYLL overtime requirements (FAC ¶¶ 156-163) and violation of the NYLL wage notice and statement requirements. (FAC ¶¶ 164-166).

### C. Plaintiff's Retaliation Allegations

The FAC contains lengthy, numerous, and detailed allegations related to his retaliation claims under the FCA, NYFCA, and NYLL. (FAC ¶¶ 51-123). Plaintiff's allegations that are relevant can be summarized as follows. At the Marhaba Pharmacy, among other things, Plaintiff was tasked with filling pharmaceutical prescriptions for customers and ensuring that the pharmacy compiled with all of the required rules and regulations. (FAC ¶ 52). During his work, Plaintiff began noticing irregularities and regulatory violations with regards to how the pharmacy operated, including recordkeeping issues, double billing insurance companies and the government, giving medicine without prescriptions, and improper medical disclosures, among other things. (FAC ¶¶ 53-71, 87-107). Plaintiff repeatedly attempted to address and correct these issues with the pharmacy technicians but was told at various times by the technicians that they were acting at the direction of the Individual Defendants. (FAC ¶¶ 55-58). Plaintiff complained orally to Defendants Siddiqui and Watto about these issues in February 2020. Defendants ignored these complaints and suggested that further complaints would lead to Plaintiff's termination. (FAC ¶¶ 81-88). Plaintiff continued to attempt to curb the unlawful behavior at the pharmacy. Eventually, on April 11, 2021, Plaintiff sent a detailed email to Defendant Siddiqui complaining about the unlawful practices in writing. This was Plaintiff's first detailed written complaint to Defendants about these issues. (FAC ¶¶ 115-117). Plaintiff alleges that two months after his email complaint, Defendants fired him in retaliation. (FAC ¶¶ 118-120). Plaintiff alleges

that the vague reasons Defendants Siddiqui gave him for his termination – a "restructuring" of the business – were pretextual and that he was fired for complaining about Defendants' fraudulent business practices in writing.[2] (FAC ¶¶ 120-123).

### D.  The Corporate Defendants Constitute a Single Employer

The FAC alleges that the Corporate Defendants constitute a single employer, such that each could be liable for the statutory violations of the others. (FAC ¶¶ 23-50). Plaintiff alleges generally that the Individual Defendants owned and operated the Corporate Defendants as a single business venture, despite the formality of separate corporate forms. (FAC ¶¶ 23-50). Contrary to Defendants' assertions, the FAC contains extremely detailed and specific allegations relating to the Corporate Defendants' common ownership (FAC ¶¶ 3-16), common pay practices, (FAC ¶¶ 24-25, 36-37), common operations, (FAC ¶¶ 24-25, 36-44, 50), common office space, (FAC ¶¶ 24-25), common business purpose, (FAC ¶¶ 24-25, 36-44, 50), shared resources, (FAC ¶¶ 24-25, 36-44, 50), and shared employees (including family members) (FAC ¶¶ 25-35, 45-48).

For example, Plaintiff alleges that the Individual Defendants all own and operate the Corporate Defendants and that they run all of the Corporate Defendants' business operations (including payroll, scheduling, inventory management) out of a centralized office on Neptune Avenue in Brooklyn. (FAC ¶¶ 3-16, 24-25). Plaintiff further alleges (with various specific examples) that the Corporate Defendants shared employees and that the Individual Defendants scheduled employees who primarily worked at one Corporate Defendant's location to work shifts at another Corporate Defendant's location, including at Marhaba Pharmacy, routinely and whenever the need arose. (FAC ¶¶ 26-35). In fact, Plaintiff alleges that when he complained

---

[2] Defendants allege, without any support in the record, that Plaintiff was terminated because of allegations that he sexually harassed other employees. MOL at 1. Plaintiff denies that he sexually harassed anyone and that this was the reason for his termination. Regardless, Defendants' ever-changing rationale for Plaintiff's termination reveals that Defendants' stated reason for Plaintiff's termination, at the time of the termination, was not true.

about not being paid overtime wages, Defendant Siddiqui offered to give him shifts at a "different pharmacy in the group" (i.e., at one of the Pharmacy Defendants) and to pay him his normal hourly wage (as opposed to less than his hourly wage for overtime, which is what Defendants typically paid Plaintiff for his overtime hours at Marhaba). (FAC ¶ 37). The FAC alleges that many of the employees at the Corporate Defendants are relatives of the Individual Defendants. (FAC ¶¶ 32, 45-48). Further, the Individual Defendants held events for all of the staff at the Corporate Defendants, including a goodbye party for an office worker who managed the books for all of the Corporate Defendants. (FAC ¶ 35).

The FAC contains allegations that the Corporate Defendants shared resources, operations, and payroll practices. Specifically, Plaintiff alleges that the Corporate Defendants acted as single enterprise, such that prescriptions submitted to one Corporate Defendant's pharmacy could be filled at any of the Corporate Defendants' pharmacies. (FAC ¶¶ 40-44). The Corporate Defendants had a common and routine practice of moving pharmaceutical stock and inventory between pharmacies as business required. (FAC ¶ 41). Plaintiff alleges that when specific Corporate Defendants had issues with insurance companies, the other Corporate Defendants would pick up the billing on the transaction while allowing customers to fill their orders at the troubled pharmacy. (FAC ¶ 42). Plaintiff also alleges that Corporate Defendants had a single policy related to paying overtime which included scheduling employees at various pharmacies to avoid having them work over 40 hours a week for any one individual Corporate Defendant. (FAC ¶¶ 36-37).

## III.    ARGUMENT

In deciding a motion to dismiss for failure to state a claim, a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiffs']

favor." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (alteration in original, original quotation marks omitted). To withstand a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal[ity].'" *Arista Records LLC v. Does*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). "A complaint need not make 'detailed factual allegations' but must contain more than mere 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549, 2014 U.S. Dist. LEXIS 188734, at *4-5 (S.D.N.Y. Apr. 7, 2014), *adopted by* 2014 U.S. Dist. LEXIS 60836 (S.D.N.Y. Apr. 24, 2014) (quoting *Iqbal*, 556 U.S. at 678). A plaintiff may plead facts "upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes an inference of culpability plausible[.]" *Arista Records LLC*, 604 F.3d at 120 (internal citations and quotation marks omitted).

In deciding a FRCP (12)(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits… documents incorporated by reference in the complaint" and documents that are "integral" to the complaint. *DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Because a document is integral to the complaint only "where the complaint relies heavily upon its terms and effects…[m]erely mentioning a document in the complaint will not satisfy this standard." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "As a general matter the Court must limit its analysis to the four

corners of the complaint in deciding a motion to dismiss." *Walter v. Queens Coll.,* 390 F. Supp. 3d 382, 393 (E.D.N.Y. 2019).

    **A.**  **The FAC Adequately Pleads That All Of The Corporate Defendants Were Plaintiff's Employer Under The Statutes**

       **i.**  **The Single Integrated Employer Doctrine**

Plaintiff has asserted his claims against all of the Corporate Defendants, rather than solely against Defendant S&P Pharmacy Corp., because he contends that the Corporate Defendants constitute a single integrated employer. The single integrated employer doctrine "allow[s] for multiple different entities to be treated as a single employer where, despite nominal difference, the entities are 'part of a single integrated enterprise.' Such a finding allows all entities to be held responsible for the [statutory] violations of any one entity." *Garcia v. Chirping Chicken NYC, Inc.*, No. 15 CV 2335, 2016 U.S. Dist. LEXIS 32750, at *20 (E.D.N.Y. Mar. 11, 2016) (internal citations omitted); *see also Zuccarini v. PVH Corp.*, No. 151755/15, 2016 N.Y. Misc. LEXIS 673, at *3-4 (Sup. Ct. N.Y. County Feb. 29, 2016) ("Under New York law, there are two well-established doctrines – the single and joint employer doctrines – that allow an employee to assert employer liability against an entity that is not formally his or her employer.") (internal quotation marks omitted).  The single employer test:

> examines the interrelation of operations, common management, centralized control of labor relations, and common ownership.  Also relevant are the use of common office facilities and equipment and family connections between or among the various enterprises. . . . Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an arm's length relationship found among unintegrated companies.

*Lihli Fashions Corp., Inc. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996) (internal quotation marks and citations omitted); *Zuccarini*, 2016 N.Y. Misc. LEXIS 673, at *4 (identifying relevant factors under New York law as "(1) interrelation of operations, (2) centralized control of labor

relations, (3) common management, and (4) common ownership or financial control") (internal quotation marks omitted). "To demonstrate single employer status, not every factor need be present, and no particular factor is controlling." *Lihli Fashions Corp., Inc.*, 80 F.3d at 747.

The Second Circuit has applied the single employer doctrine to a number of employment statutes. *See e.g., Lihli Fashions Corp., Inc.*, 80 F.3d 743; *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995). While the Second Circuit has not yet decided whether the single employer doctrine applies to the FLSA or the FCA, most courts in this Circuit, and beyond, that have considered the issue have applied it to these statutes or found it to be a viable theory at the motion to dismiss stage.[3] *See e.g.*, *Nuriddinov v. Masada III, Inc.*, No. 15 CV 5875, 2017 U.S. Dist. LEXIS 116357 (E.D.N.Y. July 24, 2017) (default judgment application); *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 CV 5735, 2017 U.S. Dist. LEXIS 92149 (S.D.N.Y. June 15, 2017) (motion to dismiss); *Flores v. 201 West 103 Corp.*, No. 16 Civ. 2233, 2017 U.S. Dist. LEXIS 91654 (S.D.N.Y. June 14, 2017) (same); *Li v. Ichiro Sushi, Inc.*, No. 14 CV 10242, 2016 U.S. Dist. LEXIS 41894 (S.D.N.Y. Mar. 29, 2016) (same); *Chimbay v. Pizza Plus at Staten Island Ferry, Inc.*, No. 15 CV 2000, 2016 U.S. Dist. LEXIS 32257 (S.D.N.Y. Mar. 14, 2016) (same); *Garcia*, 2016 U.S. Dist. LEXIS 32750 (same); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552 (S.D.N.Y. 2015) (same); *Ayala v. Your Favorite Auto Repair & Diagnostic Center, Inc.*, No. 14 CV 5269, 2016 U.S. Dist. LEXIS 127425 (E.D.N.Y. Sept. 19, 2015) (post-trial findings of fact and law); *Armata v. Unique Cleaning Servs., LLC*, No. 13 CV 3625, 2015 U.S. Dist. LEXIS 180995 (E.D.N.Y. Sept. 14, 2015) (application for default judgment); *Juarez v. 449*

---

[3] New York courts have repeatedly applied the single employer doctrine to New York employment statutory claims. *E.g.*, *Picard v. Bigsbee Enters., Inc.*, No. 1984-13, 2017 N.Y Misc. LEXIS 2052, at *23-25 (Sup. Ct. Albany County May 23, 2017) (granting plaintiffs' summary judgment motion with respect to joint and several liability under the single employer doctrine); *Zuccarini*, 2016 N.Y. Misc. LEXIS 673, at *3 (stating that the single employer doctrine is "well-established" under New York law); *Donetto v. S.A.R.L. De Gestion Pierre Cardin*, 787 N.Y.S.2d 677, 677 (N.Y. Sup. Ct. N.Y. County 2004) (applying single employer doctrine on motion to dismiss).

*Rest., Inc.*, 29 F. Supp. 3d 363 (S.D.N.Y. 2014) (motion for judgment on the pleadings); *Lopez v. Pio Pio NYC, Inc.*, No. 13 CV 4490, 2014 U.S. Dist. LEXIS 67121 (S.D.N.Y. May 15, 2014) (motion to dismiss); *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502 (S.D.N.Y. 2013) (motion to amend the complaint); *Bravo v. Established Burger One LLC*, No. 12 Civ. 9044, 2013 U.S. Dist. LEXIS 146237 (S.D.N.Y. Oct. 8, 2013) (motion to dismiss); *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091, 2013 U.S. Dist. LEXIS 35808 (S.D.N.Y. Feb. 28, 2013) (same); *Chen v. TYT East Corp.*, No. 10 Civ. 5288, 2012 U.S. Dist. LEXIS 166557 (S.D.N.Y. Mar. 21, 2012) (summary judgment motion); *see also Merritt v. Mt. Laurel Chalet, Inc.*, 96 F. Supp. 3d 801, 818 (E.D. Tenn. 2015) (applying the single employer doctrine to FCA retaliation claims); *Lipka v. Advantage Health Group, Inc.*, Case No. 13-2223, 2013 U.S. Dist. LEXIS 134435, at *9 (D. Kan. Sept. 20, 2013) (same); *Thompson v. Quorum Health Resources, LLC*, Case No. 6-cv-168, 2007 U.S. Dist. LEXIS 72376, at *6-7 (W.D. Ky. Sept. 27, 2007) (same); *see also e.g., United States ex rel. Hefner v. Hackensack University Medical Center*, Case No. 1-cv-4078, 2005 U.S. Dist. LEXIS 36427 (D.N.J. Dec. 23, 2005) (same); *Lawrence v. Int'l Bus. Mach. Corp.*, Case No. 12-cv-8433, 2017 U.S. Dist. LEXIS 120804, at *13-15 (S.D.N.Y. Aug. 1, 2017) (assuming without deciding that the single employer doctrine applies to FCA retaliation claims); *Shi v. Moog Inc.*, Case No. 19-cv-339v, 2019 U.S. Dist. LEXIS 160235, at *17-19 (W.D.N.Y. Sept. 19, 2019) (applying joint employer and single employer doctrines to FCA retaliation claims at motion to dismiss stage).

Courts have done so because "the single employer doctrine and FLSA share the same concerns for the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." *Armata*, 2015 U.S. Dist. LEXIS 180995, at *9 n.2 (quoting *TYT East Corp.*, 2012 U.S. Dist. LEXIS 166557, at *9)

10

(internal quotation marks omitted). Moreover, the FLSA contains "the broadest definition [of employ] that has ever been included in any one act." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 69 (2d Cir. 2003). This breadth, along with the Second Circuit's treatment of "employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances[,]" further supports application of the single employer doctrine to FLSA claims. *Lopez*, 2014 U.S. Dist. LEXIS 67121, at *10 (internal quotation marks omitted); *see also Armata*, 2015 U.S. Dist. LEXIS 180995, at *9 n.2; *TYT East Corp.*, 2012 U.S. Dist. LEXIS 166557, at *3. Similarly, courts "do not hesitate to apply" the single employer doctrine to FCA claims. *Merritt*, 96 F. Supp. 3d at 818. Accordingly, at this early stage of the litigation, the Court should not dismiss the claims against the Pharmacy Defendants if it finds that the complaint adequately pleads that the Corporate Defendants are a single, integrated employer. *See Yap*, 146 F. Supp. 3d at 557 (denying motion for judgment on the pleadings where court found that the single employer "theory is at least potentially available in FLSA cases, given the proper evidence").

### ii. The FAC Adequately Pleads That All of The Corporate Defendants Constitute a Single Integrated Employer

The FAC contains allegations sufficient to establish that each element of the single employer test is satisfied. This is more than enough to state a plausible claim that all of the Corporate Defendants are a single employer. *E.g.*, *Marin v. APU Foods Corp.*, No. 17 CV 3224, 2018 U.S. Dist. LEXIS 31891, at *8 (E.D.N.Y. Feb. 26, 2018), *adopted by* 2018 U.S. Dist. LEXIS 48780 (E.D.N.Y. Mar. 23, 2018) (denying motion to dismiss where complaint alleged facts concerning three of the single employer factors). As Defendants do not dispute that Defendant S&P Pharmacy Corp., which owned and operated Marhaba Pharmacy, was Plaintiff's

employer, all of the Corporate Defendants may be liable for FLSA and NYLL violations as a single employer.

The FAC plainly alleges that each Individual Defendant is a part owner of each Corporate Defendant, establishing common ownership. (FAC ¶¶ 14-16, 23). The Individual Defendants exercise supervisory authority over the schedules, employees, payroll, and operations of all of the Corporate Defendants, demonstrating common management. (FAC ¶¶ 14-16, 23). Further, the FAC alleges that the Individual Defendants manage, operate, and control the Corporate Defendants from a single office in Brooklyn, with common office staff responsible for the back-office work related to all of the Corporate Defendants. (FAC ¶¶ 24-25, 34-35). Importantly, the Individual Defendants are themselves family members and they own the Corporate Defendants with other family members. (FAC ¶¶ 45-48). At this stage, these facts are more than enough to plausibly allege common ownership and management. *See Ferrara v. Oakfield Leasing, Inc.*, 904 F. Supp. 2d 249, 263-64 (E.D.N.Y. 2012) (finding common ownership when companies are owned by close family members).

In response to the allegations in the FAC, Defendants misapply the motion to dismiss legal standard and continuously dispute Plaintiff's factual allegations and assert their own interpretations of what these facts *could* mean. For example, to rebut the FAC's straightforward common ownership allegations, Defendants argue that because the FAC alleges that the three Individual Defendants owned and controlled the Corporate Defendants that they were controlled by "multiple" people and thus there is no "common control." MOL at 11; *see also* MOL at 7 (arguing that a shared office does not support an allegation of a single employer because it "merely saves costs" and is a "common phenomenon in the new business world"). This is inappropriate at the motion to dismiss stage, where the Court must "draw all reasonable

inferences in the plaintiff's favor." *Walter,* 390 F. Supp. 3d at 390. The Court should reject Defendants' various explanations of the facts in the FAC as Defendants improperly interpret them in Defendants' favor.

Nevertheless, the allegations in the FAC also support a finding of centralized control of labor relations. The FAC alleges generally that the Corporate Defendants employed many of the same pharmacy technicians. (FAC ¶¶ 26-38). The FAC provides at least five examples of individuals who worked at multiple pharmacies owned by the Corporate Defendants. (FAC ¶¶ 26-33). The FAC further alleges that the Individual Defendants would move employees around from pharmacy to pharmacy as needed to cover unexpected absences. (FAC ¶ 26). Plaintiff further alleges that the Individual Defendants own an adult day care business and would instruct employees from this business to fill in at the various Corporate Defendants' pharmacies to cover shifts on short notice. (FAC ¶ 33). Courts have found that the sharing of employees supports a finding of centralized control of labor relations. *Chimbay*, 2016 U.S. Dist. LEXIS 32257, at *10-11; *Picard v. Bigsbee Enters., Inc.*, No. 1984-13, 2017 N.Y Misc. LEXIS 2052, at *24 (Sup. Ct. Albany County May 23, 2017); *Ferrara*, 904 F. Supp. 2d at 262. Defendants' contention that nothing can be inferred from sharing employees is simply wrong. *See e.g.,* MOL at 8 (arguing that employees are allowed to work for whoever they want, and nothing can be inferred from them working shifts at the various defendant owned pharmacies).

Plaintiff's allegations concerning the Corporate Defendants' common payroll practices further supports a finding of centralized control of labor relations. *Chimbay*, 2016 U.S. Dist. LEXIS 32257, at *10; *Juarez*, 29 F. Supp. 3d at 368; *see Picard*, 2017 N.Y. Misc. LEXIS 2052, at *23-25. The FAC alleges that payroll for all the Corporate Defendants is controlled by the Individual Defendants from a centralized location. (FAC ¶¶ 23-25). The FAC also alleges that

the Individual Defendants operated the Corporate Defendants' payroll in centralized and systematic manner, and, notably, in way to avoid paying overtime to their employees. For example, Plaintiff alleges that when he complained about not being paid overtime wages, Defendant Siddiqui offered to give him shifts at one of the other Pharmacy Defendants and to pay him his normal hourly wage (as opposed to less than his hourly wage for overtime, which is what Defendants paid Plaintiff). (FAC ¶¶ 36-37). *See e.g., Bravo*, 2013 U.S. Dist. LEXIS 146237 at *21-24 (finding centralized control of labor relations when payroll was run out of single office with common payroll methods).

The allegations in the FAC also establish that the Corporate Defendants have interrelated operations. As an initial matter, all of the Corporate Defendants have the same business purpose of operating pharmacies, which is indicative of interrelated operations.[4] (FAC ¶¶ 5-12). *See Finkel v. Frattarelli Brothers, Inc.*, No. 05 CV 1551, 2008 U.S. Dist. LEXIS 46973, at *31 (E.D.N.Y. June 17, 2008); *Ghaffar v. Willoughby 99 Cent, Inc.*, No. 09 CV 509, 2010 U.S. Dist. LEXIS 88888, at *8 (E.D.N.Y. Aug. 27, 2010). The FAC specifically alleges that the Corporate Defendants shared pharmaceutical inventory between the various pharmacies, such that the inventory of all the Corporate Defendants was treated as a single stock of medicine that any Corporate Defendant could pull from if the need arose. (FAC ¶¶ 39-41). Relatedly, the FAC alleges that the Defendants had a practice of allowing customers to pick up medication at any of the Corporate Defendants pharmacies regardless of which of the Corporate Defendants' pharmacies they initially submitted a prescription to. (FAC ¶ 43). The FAC goes on to provide specific examples of these interconnected operations: alleging instances where inventory was distributed among and between specific Corporate Defendants (i.e., Defendant Healthy Ways

---

[4] The fact that all of the Corporate Defendants have different names is of no moment. Courts have repeatedly found single employer adequately pled where defendants operated businesses with different names. *Flores*, 2017 U.S. Dist. LEXIS 91654, at *2 (listing different business names); *Chimbay*, 2016 U.S. Dist. LEXIS 32257, at *1-2 (same).

Pharmacy) and where Plaintiff was instructed to charge other Corporate Defendants (i.e., Defendants Saul's Pharmacy and Healthy Ways Pharmacy) for prescriptions that were filled at Marhaba Pharmacy (FAC ¶¶ 42, 44). All of these specific examples of interconnected business operations plainly support Plaintiff's allegations that the Corporate Defendants are an integrated single enterprise.[5] *See Ferrara*, 904 F. Supp. 2d at 261-263; *Bravo*, 2013 U.S. Dist. LEXIS 146237 at *21-24.

Again, Defendants' attempts to explain away these facts is inappropriate at the motion to dismiss stage. *See e.g.,* MOL at 10 (arguing that sharing pharmaceutical inventory is legal and because Defendants may have purchased inventory or obtained it in a non-nefarious manner there is no reason to infer interconnection of operations); MOL at 9 (arguing that a corporate event attended by employees of Defendants only show that people in the community know each other); MOL at 13 (arguing that the various pharmacies cannot be operationally interconnected because they compete for the same business[6]); MOL at 14 (arguing that if the Court finds liability against any specific Defendant, it precludes the possibility of liability against any other Defendant). Defendants' further contention that "there are simply no specific allegations as it relates to [Defendants] Nathan's Sual's, Apni's and Watto Corp. and how they fit into Plaintiff's joint employer or single enterprise theory" is simply not true. *See* MOL at 12. The FAC includes all of these defendants in the definition of "Corporate Defendants" and then, as detailed above, makes specific allegations about how these Defendants operated in coordination with each other to show common ownership, management, resources, employees, office space, inventory, etc.

---

[5] A finding of interrelated operations is further supported by Plaintiff's allegations that the various pharmacies shared employees and the involvement of the Individual Defendants' family in the operations of the Corporate Defendants. (FAC ¶¶ 26-38, 45-48). *Ferrara*, 904 F. Supp. 2d at 261; *Picard*, 2017 N.Y. Misc. LEXIS 2052, at *24.

[6] This argument is particularly hard to understand. Defendants' position appears to be that it is reasonable to infer from the fact that several pharmacies are owned by the same individuals that these pharmacies are actually in *business competition with each other* and therefore they cannot be operationally interconnected. This makes no sense.

(FAC ¶¶ 23-50). The FAC goes beyond that and provides individualized examples of situations that Plaintiff witnessed involving specific Corporate Defendants sharing employees, trading inventory, and coordinating billing, etc. (FAC ¶¶ 26-36, 42-44). This format of pleading – with allegations of how the Corporate Defendants were interconnected, followed by individualized examples of the interconnectedness – is plainly sufficient to give rise to a reasonable inference that the Corporate Defendants are a single employer. *See e.g., Marin,* 2018 U.S. Dist. LEXIS 31891, at *8 (denying motion to dismiss where complaint alleged facts concerning three of the single employer factors).

Finally, as a legal matter, Defendants' argument that the FAC fails to allege that the Corporate Defendants are a single integrated employer should be rejected because Defendants misstate and misapply the relevant legal standard. Instead of engaging with the factors underlying the single integrated employer doctrine (i.e., interrelation of operations, centralized control of labor relations, common management, and common ownership), Defendants appear to argue that Plaintiff failed to allege that the Corporate Defendants are, collectively, an "enterprise" under that statutory definition in the FLSA. *See* MOL at 5-14. This argument is inapposite to Plaintiff's position. Defendants are mistaken about the legal underpinning of the integrated single employer doctrine – it does not arise out of the FLSA definition of "enterprise"; it is a doctrine that allows courts to "impose liability for…violations of employment law not only on the nominal employer *but also on another entity comprising part of a single integrated employer*." *Lopez*, 2014 U.S. Dist. LEXIS 67121, at *9 (emphasis added). The "enterprise" requirement under the FLSA is a separate issue and relates to whether an entity can be considered a "business" such that the minimum wage and overtime requirements in the FLSA apply. *See Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 458 (S.D.N.Y. 2006)

(explaining that the DOL regulations "note an important distinction between an 'enterprise', 'establishment' and 'employer'" and that "a single employer may operate more than one enterprise" and determining that the NGO defendant was not an "enterprise" because it lacked a "business purpose"). There is no question here that each of the Corporate Defendants are businesses that run pharmacies, and, thus, that each Corporate Defendant is themselves an "enterprise" that is subject to the requirements in the FLSA. (FAC ¶¶ 3-16). Thus, Defendants' arguments that Plaintiff failed to plead that the Corporate Defendants make up, collectively, an "enterprise" under the FLSA is nonsensical.[7]

For all the reason stated above, the FAC plausibly alleges that all of the Corporate Defendants were Plaintiff's employer under the single employer doctrine.

### B. The FAC Adequately Pleads That the Individual Defendants Were Plaintiff's Employers Under the NYLL and FLSA

The FAC adequately pleads that the Individual Defendants were Plaintiff's employers under the FLSA and NYLL. Whether an individual is an employer under the NYLL and FLSA "depends on whether the particular defendant had the power to hire and fire employees, whether [they] supervised and controlled the conditions of employment, and whether [they] determined rates and methods of payment." *Flannigan v. Vulcan Power Group, LLC,* 642 F. App'x 46, 52 (2d Cir. 2016); *Bravo*, 2013 U.S. Dist. LEXIS 146237, at *16. Here, the FAC plainly alleges

---

[7] To the extent that Defendants' motion is premised on Plaintiff's failure to plead an FLSA violation because there are insufficient facts to support "enterprise" coverage under the FLSA, Defendants are incorrect. "Employers are liable under the FLSA for…overtime compensation if an employee is…employed by an enterprise engaged in commerce or in the production of goods for commerce." *Berrezueta v. Royal Pastry Shop, Inc.*, Case No. 12-cv-4830, 2014 U.S. Dist. LEXIS 102749, at *13 (E.D.N.Y. July 28, 2014). An entity is an "enterprise" under the FLSA where (1) there are related activities, (2) performed through unified operation or common control; and (3) for a common business purpose. *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 21 (E.D.N.Y. 2020). Here, Plaintiff clearly alleges that he worked and was employed as the Supervising Pharmacist at Defendant S&P Pharmacy Corp. (i.e., Marhaba Pharmacy). (FAC ¶¶ 17, 22). The FAC alleges that each Corporate Defendant, including Defendant S&P Pharmacy Corp., operated a pharmacy as a business venture. (FAC ¶¶ 3-16). Each Corporate Defendant, in running a pharmacy, conducted related activities related to the pharmacy, controlled the operations at their pharmacy, for the business purpose of operating a pharmacy. Thus, each Corporate Defendant is an "enterprise" and may be subject to the requirements of the FLSA.

specific facts that each Individual Defendant had the power to hire and fire Plaintiff, set his work schedule, control the conditions of his employment and determine his rate and method of payment. (FAC ¶¶ 125-137). *See Bravo*, 2013 U.S. Dist. LEXIS 146237, at *20-21.

### C.   The FAC Sufficiently States A Claim For Relief for Overtime Violations Under the FLSA.

The FLSA requires employers to pay employees one and a half times their regular rates for hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12 § 142-2.2. The term "regular rate" "refers to the hourly rate actually paid to the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). "To state a plausible overtime claim under the FLSA, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Heras v. Metro. Learning Inst.*, NO. 19 CV 2694, 2021 U.S. Dist. LEXIS 3434, at *13 (E.D.N.Y. Jan. 7, 2021) (internal quotation marks omitted). The FAC satisfies this standard. Specifically, Plaintiff alleges that (1) at all relevant times Defendants paid him an hourly rate of $58 or $60 per hour; (2) he routinely worked 45 hours per week; and (3) rather than paying him one and a half times his regular rate for overtime hours, Defendants paid him *less than* his regular hourly rate for overtime hours. (FAC ¶¶ 138-143). Accordingly, the FAC states an FLSA overtime claim. *E.g.*, *Heras*, 2021 U.S. Dist. LEXIS 3434, at *13-14.

Defendants' contention that Plaintiff was exempt from the overtime requirements of the FLSA as a learned professional and/or highly paid employee is improper at this stage.[8] MOL at

---

[8] Unlike the FLSA, the NYLL's learned professional exemption does not have "salary basis" test. *See e.g., Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290, 302 (E.D.N.Y. 2016) ("In order to meet the learned professional exemption under the FLSA, both the 'salary basis' and 'primary duty' tests must be satisfied. To meet the exemption under the NYLL, only the 'primary duty' test must be satisfied."). Because Plaintiff's opposition to Defendants' motion on the exemption issues is based primarily on the "salary" requirement in the overtime exemptions, *supra at*

21-25. Overtime exemptions are affirmative defenses on which the Defendants bear the burden of proof. *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009). Thus, a motion to dismiss overtime claims based on an exemption may be granted only if "the defense appears on the face of the complaint." *Chen v. Major League Baseball*, 798 F.3d 72, 81 (2d Cir. 2015).

Aside from other requirements, in order for either the FLSA's learned professional exemption or highly paid employee exemption to apply, Plaintiff must have been paid a salary. *See Liu v. NY Neuromodulation Med., P.L.L.C.*, Case No. 20-cv-5000, 2021 U.S. Dist. LEXIS 146044 at *3 (S.D.N.Y. Aug. 4, 2021) (explaining that a salary is necessary for professional exemption); *Anani v. CVS RX Servs.*, Case No. 9-cv-5535, 2011 U.S. Dist. LEXIS 57625 at *11-13 (E.D.N.Y. May 23, 2011) (explaining that a salary is necessary for highly paid exemption). Because the "face of the complaint" clearly states that Plaintiff was paid an hourly wage, not a salary (FAC ¶¶ 138-143), Defendants' motion should be denied.

### i. The Learned Professional Exemption Does Not Apply to Plaintiff's Employment.

The law is clear on this issue. To qualify for the "learned professional" exemption to the FLSA's overtime requirements, an employee, among other things, must be "compensated on a salary or fee basis." 29 C.F.R. § 541.300(a)(2); *see e.g., Liu v. NY Neuromodulation Med., P.L.L.C.*, Case No. 20-cv-5000, 2021 U.S. Dist. LEXIS 146044 at *3 (S.D.N.Y. Aug. 4, 2021) ("The learned professional exception requires an employer to demonstrate that an employee was paid on a salary basis."); *Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F.Supp.3d 290, 302 (E.D.N.Y. 2016) (applying salary basis test to the FLSA's learned professional exemption). Under the regulations, "[a]n employee will be considered to be paid on a 'salary basis' … if the employee regularly receives each pay period on a weekly, or less frequent basis, a *predetermined*

---

18-22, Plaintiff consents to the dismissal of the NYLL overtime claim only. (Fifth Claim for Relief, FAC ¶¶ 160-163).

*amount* constituting all or part of the employee's compensation." 29 C.F.R. § 541.602(a) (emphasis added). To be a salary, this "predetermined amount" must "not [be] subject to reduction because of the variations in the quality or quantity of work performed." *Id.*

Here, because Plaintiff alleges that he was paid an hourly wage, not a salary, he is not subject to the learned professional exemption. (FAC ¶¶ 138-143). A straight hourly wage that is calculated based on hours worked is not a "predetermined amount" that is "not subject to reduction because of the…quantity of work performed" and is therefore not a "salary" under the regulations. 29 C.F.R. § 541.602(a); *see e.g., Cavalotti v. Daddyo's BBQ, Inc.*, Case No. 15-cv-6469, 2018 U.S. Dist. LEXIS 154918, at *21-23 (E.D.N.Y. Sept. 8, 2018) (finding allegations of hourly pay sufficient). Defendants assert, without any support or citation to the FAC, that Plaintiff "was paid a flat rate for all hours worked." MOL at 22. This baseless assertion is flatly contradicted by the FAC and, at the motion to dismiss stage, should be ignored.

Further, Defendants are simply wrong that by listing "past salary," among many categories of compensatory damages in one of his requests for relief for one of his retaliation claims, Plaintiff "admits" he was paid a salary. *Id.* First, a stray reference to "salary" in a request for damages in a separate cause of action is not determinative of whether, "draw[ing] all reasonable inferences in [plaintiffs'] favor," the FAC alleges that Plaintiff was paid an hourly rate and not a salary. *Hayden,* 594 F.3d at 160. The FAC plainly alleges as much. Second, Plaintiff's reference to "salary" in a list of the relief sought for his NYLL unlawful termination claim (i.e., "loss of income, including… past salary…" (FAC ¶ 154)) is quite clearly a reference to the concept of back pay and cannot be understood as an affirmative allegation that he was paid on a "salary basis" as defined in the regulations. Nevertheless, the FRCP explicitly allows Plaintiff to plead in the alternative and in an inconsistent manner. FRCP 8(d)(3), titled "Inconsistent Claims

or Defenses" provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Further, FRCP 8(a)(3) provides that a "demand for the relief sought… may include relief in the alternative." Thus, even if Plaintiff's passing reference to "salary" could be understood as an allegation that he was paid "on a salary basis" (it cannot), Plaintiff is allowed to plead as such without admitting, for purpose of his overtime claims, that he was paid a salary. This Court should reject Defendants' attempt to play "gotcha" on this issue.

## ii. The Highly Compensated Employee Exemption Does Not Apply to Plaintiff's Employment.

The law is clear on this issue as well. To qualify for the highly compensated employee ("HCE") exemption, an employee must, among other things, have a total annual compensation of at least $107,432. *See* 29 C.F.R § 506(a)(1); *Gomez v. Natl. Fin. Network, Inc.*, Case No. 20-cv-1968, 2021 U.S. Dist. LEXIS 145513, at *42-43 (E.D.N.Y. Aug. 2, 2021). However, courts in this Circuit have routinely and consistently interpreted this exemption to require that the employee be paid this high compensation on a salary basis. *See e.g., Anani*, 2011 U.S. Dist. LEXIS 57625 at *11-13 (explaining that a salary is necessary for HCE exemption); *Siji Yu v. Knighted LLC*, Case No. 15-cv-9430, 2019 U.S. Dist. LEXIS 80419 at *15-21 (S.D.N.Y. May 13, 2019) (analyzing whether employee was paid a salary to determine whether the HCE exemption applies); *Gomez*, 2021 U.S. Dist. LEXIS 145513, at *43-45 (recognizing that the "salary basis" test applies to HCE exemption). This is unsurprising because "requiring that a highly compensated worker, and *a pharmacist in particular*, be paid at least in part on a salary basis is consistent with the well-established case law holding that 'employees are not to be deprived of the benefits of the [FLSA] simply because they are well paid.'" *Anani v*, 2011 U.S. Dist. LEXIS 57625 at *12 (emphasis added) (quoting *Jewel Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America*, 325 U.S. 161 (1945)). Thus, for the same reasons that the

learned professional exemption does not apply – because Plaintiff alleges that he was paid an hourly wage and not a salary – the highly compensated employee exemption does not apply as well. (FAC ¶¶ 138-143). Defendants simply do not address the salary requirement as it pertains to the HCE exemption. This is fatal to their motion. *See* MOL at 23-24.

Defendants instead inappropriately attach extraneous exhibits to their papers in attempt to "prove" that Plaintiff was paid more than $107,432 annually. This Court should reject Defendants' attempts to shoehorn into the record extraneous payroll records because 1) they were not incorporated into the FAC, 2) the FAC does not rely at all on their terms, and 3) they are irrelevant. *See Goel*, 820 F.3d at 559 ("Merely mentioning a document in the complaint will not satisfy" the "integral" outside document requirement)*.* Regardless, at this stage, the amount of money that Defendants paid Plaintiff is irrelevant because Plaintiff has adequately alleged that he was not paid a salary, and thus, on the face of the complaint, the HCE does not apply.

### D.  The FAC Adequately Pleads NYLL § 195 Claims Against All Defendants.

Defendants are wrong that only Defendant S&P Pharmacy Corp. can be held liable for violations of NYLL § 195 – failure to provide written wage notice and accurate wage statements. *See* MOL at 25-26. For the reasons that the Individual Defendants and the Corporate Defendants can be held liable under the FLSA, articulated above, *supra* at 8-18, all Defendants can be held liable for violations of NYLL § 195. *See Picard*, 2017 N.Y Misc. LEXIS 2052, at *23-25 (apply the single employer doctrine to NYLL).

### E.  The FAC Sufficiently States A Claim For Relief For Retaliation Under the FCA and NYFCA Against All Of The Corporate Defendants.

The FAC sufficiently alleges retaliation claims under the FCA and the NYFCA.[9] To set forth a claim of retaliation under the FCA and NYFCA, Plaintiff is required to plead that 1) he engaged in protected activity, 2) the employer was aware of such activity, and 3) the employer took adverse action against him because he engaged in the protected activity. *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017); *see also Garcia v. Aspira of N.Y., Inc.,* Case No. 7-cv-5600, 2011 U.S. Dist. LEXIS 41708, at *9 n.2 (S.D.N.Y. April 13, 2011) (noting that the NYFCA "closely tracks" the FCA and analyzing both statutory claims simultaneously). The FAC satisfies these basic requirements.[10] The FAC alleges that Plaintiff emailed Defendant Siddiqui in April 2021 notifying him, among other things, that there was Medicare and Medicaid fraud occurring at the Marhaba Pharmacy. (FAC ¶¶ 110-117). This is classic protected activity. *See Beckles-Canton v. Lutheran Soc. Servs. of N.Y.*, Case No. 20-cv-4379, 2021 U.S. Dist. LEXIS 135371, at *13-16 (S.D.N.Y. July 20, 2021) (finding that complaining to supervisors and CEO about misuse of government funds constitutes protected activity); *Garcia*, 2011 U.S. Dist. LEXIS 41708, at *12-13 (collecting similar cases). Further, Defendant Siddiqui was plainly aware of these complaints as Plaintiff alleges that he responded to the email. (FAC ¶¶ 116-117). Plaintiff alleges that he was fired shortly after his written complaints (within two months) and that the reasons that Defendants gave him were pre-textual. (FAC ¶¶ 118-123). The two-month time gape between his written complaint and his firing is

---

[9] Defendants do not appear to have moved to dismiss Plaintiff's retaliation claim under the NYLL. (Third Cause of Action, FAC ¶¶ 151-155). *See* MOL at 17-21. As such, Plaintiff does not address the NYLL retaliation claim here, other than to note that for the same reasons Plaintiff has adequately pled single employer liability under the FLSA, *supra* at 8-17, Plaintiff has pled single employer liability for the NYLL retaliation claim. In addition, Defendants explicitly did not request to move to dismiss the FCA and NYFCA claims against Defendant S&P Pharmacy, Corp. *See* Dkt. 14. However, it is unclear from Defendants motion papers whether Defendants moved to dismiss these claims against Defendant S&P Pharmacy, Corp. *See* MOL at 17-20. Nevertheless, for the reasons set forth herein, the FAC plainly alleges retaliation claims against Defendant S&P Pharmacy, Corp. and the other Corporate Defendants.

[10] While Defendants provide a separate section in their brief dedicated to the NYFCA claims, Defendants simply recite the NYFCA standards and do not advance any specific arguments related to the NYFCA. MOL at 20. Nevertheless, for the same reasons the FAC states a claim under the FCA, the FAC states a claim under the NYFCA. *See Garcia*, 2011 U.S. Dist. LEXIS 41708, at *9 n.2.

sufficient, at the pleading stage, to state a causal connection between the protected activity and the adverse action. *See Beckles-Canton,* 2021 U.S. Dist. LEXIS 135371, at *25-27 (collecting cases) (finding sufficient a seven-month gap). Accordingly, Plaintiff has stated a claim for retaliation under the FCA and NYFCA.

Defendants' arguments to the contrary are wrong. Defendants appear to argue that because Plaintiff was responsible for the regulatory compliance at Marhaba Pharmacy that any irregularities were Plaintiff's fault and responsibility and thus any complaints about the pharmacy cannot be considered "protected activity." *See* MOL at 18. This is an absurd argument. The entire gravamen of the FAC is that despite Plaintiff's best efforts to curb the fraud and other regulatory violations at the pharmacy, he was prevented from doing so because the Individual Defendants were going around his authority and instructing the staff directly, so he complained to Defendant Siddiqui. (FAC ¶¶ 51-58, 73-74, 89-92, 110-117). Defendants' position that Defendants were not aware of Plaintiff's complaints because "Plaintiff neither complained of fraud or alleged that he was investigating fraud" is plainly contradicted by the FAC. (FAC ¶¶ 110-117). Again, Defendants' argument comes down to misrepresenting the FAC.

Moreover, Defendants' position that Plaintiff has not sufficiently alleged that his complaints caused his termination because he first voiced concerns about regulatory issues at the Marhaba Pharmacy two years before he was fired is incorrect. The full context and history of Plaintiff's complaints supports an inference that he was terminated for complaining about fraud. *See e.g., Beckles-Canton,* 2021 U.S. Dist. LEXIS 135371, at *25-27 (analyzing the context and timeline of complaints and termination to find a reasonable inference of causation). While Plaintiff first attempted to meet with Defendant Siddiqui to discuss the fraud and regulatory issues at the pharmacy in April 2019, Plaintiff first spoke to Defendants Siddiqui and Watto

about these issues in February 2020. (FAC ¶¶ 75-81). At this meeting, Defendant Siddiqui threatened Plaintiff with termination should he continue to raise his concerns. (FAC ¶¶ 83-86). At that time, there was no written record of Plaintiff's complaints. Because the fraud and regulatory violations continued, in April 2021 Plaintiff for the first time detailed his concerns and complaints in writing to Defendant Siddiqui. (FAC ¶¶ 115-118). Plaintiff alleges that Defendant Siddiqui responded in writing, saying that this was the first time he had heard about these issues (which Plaintiff alleges is untrue). (FAC ¶ 116). Soon thereafter Defendant Siddiqui fired Plaintiff and provided him with an, admittedly, false reason for the termination. (FAC ¶¶ 118-123). At this stage, this alleged timeline clearly supports an inference that Defendants fired Plaintiff in retaliation after it was clear that he was not going to drop his concerns about fraud. *See e.g., Beckles-Canton,* 2021 U.S. Dist. LEXIS 135371, at *25-30.

Finally, Defendants' argument that only Defendant S&P Pharmacy Corp. can be held liable for retaliation because Plaintiff did not complain directly to any other Defendant or that his complaints did not refer to fraud related to other Defendants is misplaced.[11] For the same reasons that Plaintiff has sufficiently alleged that the Corporate Defendants are a single integrated employer under the FLSA and NYLL, *supra* at 8-17, the Corporate Defendants are a single integrated employer and can be found liable under the FCA and NYFCA.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' FRCP 12(b)(6) motion to dismiss should be denied.

---

[11] Defendants' assertion that Plaintiff's complaints to Defendant Siddiqui did not include complaints about insurance fraud involving the other Corporate Defendants is untrue and contradicted by the FAC. (FAC ¶¶ 95-99).

Dated:  New York, New York
       April 4, 2022

                                      /s/ Michael DiGiulio
                                      Michael DiGiulio
                                      JOSEPH & KIRSCHENBAUM LLP
                                      32 Broadway, Suite 601
                                      New York, NY 10004
                                      212-688-5640

                                      *Attorneys for Plaintiff*