# JOSEPH & KIRSCHENBAUM LLP
## ATTORNEYS AT LAW

November 22, 2022
**Via ECF**

Hon. Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Syed v. S&P Pharmacy Corp., et. al* – No. 21-cv-6000 – Joint Discovery Letter

Dear Judge Kuo,

We represent the Plaintiff in the above captioned case. I write jointly with Defendants pursuant to your Honor's Individual Rule VI(A)(1)(b) and the November 16, 2022 Minute Order ("Minute Order") directing the parties to raise any remaining outstanding discovery issues in this matter via joint letter by November 22, 2022. Per the Minute Order, on November 17, 2022, the parties met and conferred about the outstanding discovery issues in this case. The meet and confer was effective at reducing the number of outstanding issues in this matter.[1] However, the parties were unable to resolve all of the discovery issues, and the parties now seek the Court's intervention on the following outstanding issues.[2]

## Plaintiff's Position

*Background*

Relevant here, Plaintiff alleges that his employment at Marhaba Pharmacy ("Pharmacy") was unlawfully terminated, in violation of the False Claims Act ("FCA"), the New York False Claims Act ("NYFCA") and the New York Labor Law ("NYLL") because he was fired in retaliation for complaining to his supervisor about Medicare and Medicaid fraud that he believed was occurring at the Pharmacy. *See* Amended Complaint ("Compl.") at ¶¶ 51-123, 145-155 (Dkt. No. 16). Most relevant here, Plaintiff alleges that he became aware of a scheme, involving a specific doctor (Dr. Wahid) and Defendants, to bill Medicare and Medicaid (and private insurance companies) for medication that was never given to customers. Compl. at ¶¶ 67-70. In short, Plaintiff believed he uncovered a double billing operation that was run by Defendants and Dr. Wahid, and he complained to his supervisor multiple times about it. Compl. at ¶¶ 72-86. Plaintiff alleges that Defendant Siddiqui, his supervisor, responded to these complaints by telling Plaintiff that Dr. Wahid was "good for business" and without "good business" Plaintiff would be out of a job – a

---

[1] At the meet and confer, Plaintiff agreed to withdraw his Request for Production ("RFP") No. 29 but reserved the right to serve this document request at a later date if the Court does not dismiss Plaintiff's claims again Defendant Medicine Shoppe Pharmacy pursuant to Defendants' submitted motion to dismiss. *See* Dkt. No. 17. In addition, Defendants amended their Interrogatories Nos. 7 and 20, and RFP Nos. 13 and 19. Plaintiff agreed to respond to these amended requests and did so on November 22, 2022. To date, the parties have complied with the Court's Minute Order, and the only outstanding discovery issues at this time are detailed in this joint letter.

[2] Defendants' Second Amended Responses to Plaintiff's Requests for Production of Documents are attached as Ex. A, with specific customer names redacted.

## Joseph & Kirschenbaum LLP
#### Attorneys At Law

thinly veiled threat. Compl. at ¶¶ 85-86. Plaintiff later put his complaints in writing, shortly after which he was fired. Compl. at ¶¶ 109-123.

*Outstanding Discovery Issues*

Plaintiff seeks two overlapping categories of documents (related to prescription information) which relate to the underlying fraud that Plaintiff believes he was fired for complaining about. Because the discovery issues for both requests overlap substantially, for purposes of this letter, Plaintiff treats them collectively.

> *RFP No. 20*: Plaintiff seeks "all documents and communications related to all prescriptions written by Dr. Abdul Wahid." *See* Ex. A, RFP No. 20.
>
> *RFP No. 28*: Plaintiff seeks "all documents reflecting all prescriptions filled at Marhaba Pharmacy from 2017 to 2020, including but not limited to, documents reflecting the date of sale, pharmacist verification record (Pvrf) for patient, track alterations in Micromerchant System, received date, billing date, and dispersion date, for" a list of patients.[3]

At the November 17 meet and confer Defendants stated that they did not have any "communications" between Dr. Wahid and Defendants. However, even though Defendants claimed that they were unsure what documents Plaintiff sought that would be "related" to prescriptions (that were not communications), Defendants stated that if they were in possession of those documents, they would not produce them because they are irrelevant to Plaintiff's claims, they contain HIPPA protected information, they are overbroad and unduly burdensome, and they are not "in possession" of any prescriptions because the prescriptions are the property of Dr. Wahid or the individual customers.

In response, Plaintiff clarified that he sought any electronically stored documents related to the identified prescriptions, which includes prescription and billing information.[4] Plaintiff further offered to limit the time frame of the requests (2019-February 2020) and to limit the production to "reports" or other summary documents detailing the prescriptions that Dr. Wahid wrote and that were processed at Marhaba Pharmacy or that were issued to the individual customers. In addition, Plaintiff suggested that if there were HIPPA concerns that Defendants could redact individual customer names and insert identifying markings to protect customer privacy while still allowing for the discovery of relevant documents and that the parties' confidentiality order would suffice to protect patient confidentiality. Defendants would not agree to Plaintiff's narrowed requests.

Plaintiff maintains that these prescriptions are centrally relevant to Defendants' retaliation claim because they support Plaintiff's contention that he engaged in protected activity when he complained about the above-described fraudulent scheme. Under the FCA, protected conduct is defined as "lawful acts done by the employee….in furtherance of…efforts to stop…violations of the [FCA]." 31 U.S.C. § 3730(h)(1). Specifically, courts "have required a plaintiff to show a 'good faith basis' or an 'objectively reasonable basis' for believing that…[he] was investigating matters

---

[3] The client names are redacted in Ex. A.
[4] Defendants disagree that Plaintiff articulated this clarification as discussed more fully in Defendants' position. Even with this new clarification, Defendants maintain their objections as outlined below.

JOSEPH & KIRSCHENBAUM LLP
ATTORNEYS AT LAW

in support of a viable FCA case." *Krause v. Eihab Human Servs.*, No. 10-cv-898, 2015 U.S. Dist. LEXIS 101820, at *16 (E.D.N.Y. Aug. 4, 2015); *see also U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 103 (D.C. Conn. 2006) (holding that the "objectively reasonable" standard is met when a plaintiff engages in an investigation in which it would be reasonable to conclude that there is a 'distinct possibility' that…[he] would find evidence of an FCA violation"). Here, the prescriptions that Plaintiff seeks are the exact documents, and contain the same information, that Plaintiff viewed when he worked at Marhaba, and which gave him the belief that Defendants (along with Dr. Wahid) were engaged in fraud against the government, and which caused him to raise the issue with his boss. Thus, these documents are plainly relevant to whether Plaintiff had a "good faith basis" or an "objectively reasonable basis" for complaining.

Unsurprisingly, in FCA and NYFCA retaliation cases, courts in this Circuit have ordered Defendants to produce documents related to the fraud that an employee complains about. *See U.S. ex rel. Rubar v. Hayner Hoyt Corp.*, Case No. 14-cv-830, 2018 U.S. Dist. LEXIS 158824 at *19-35 (N.D.N.Y. Sept. 18, 2018) (ordering Defendants to produce documents related to the alleged fraud because "to show he was engaged in protected activity, [Plaintiff] must be able to offer evidence that a reasonable person would believe that participating in Defendants' scheme would violate the FCA."). The same rationale applies to the disputed documents here. To be clear, Plaintiff is not seeking these documents to prove that Defendants engaged in fraud. He is seeking them to show why *he believed* they were – which is an element that he has the burden of proving.

However, in addition, these documents are relevant for the second reason that they relate to whether Defendants' non-retaliatory reasons for terminating Plaintiff's employment was pre-textual. In short, "information about the underlying fraud may be relevant to motive in plaintiff's retaliation claim, specifically as to pretext, as the plaintiff would be required to show that a retaliatory reason motivated the employer or that the defendants' reason for the adverse employment decision was pretext." *Id.* In other words, "if Plaintiff could demonstrate that the documents reveal the existence of false claims on the part of the Defendant, then such evidence may be probative of the Defendants' motivation." *Id.* Thus, whether Defendants actually engaged in fraud is relevant to whether they fired Plaintiff in retaliation for blowing the whistle on them.

Further, to the extent that these documents contain third-party confidential HIPAA patient information, Defendants can redact this information and use a numeric or alphabetical signifier, as is common when discovery obligations conflict with HIPPA requirements. *See e.g., Gress v. Coshocton Cty Mem. Hosp.*, Case No. 2:07-cv-434, 2009 U.S. Dist. LEXIS 86446 at *3-4 (Ohio S.D.C., Sept. 8, 2009) ("Ordinarily, concerns about patient confidentiality under HIPPA are satisfied by redacting identifying information from the records at issue."). To the extent that Defendants claim that producing responsive documents is overly burdensome, Defendants have failed to carry their burden as they have not explained, at the any of the meet and confers, or at any other point, the manner in which these documents are kept, the number of responsive documents in their possession, or why it would be overly burdensome to produce. *See Shannon v. N.Y. City Transit Auth.*, Case No. 00-cv-5079, 2001 U.S. Dist. LEXIS 3162 at *5 (S.D.N.Y. March 17, 2001) ("As for the burden issue, the [Defendant] has failed to provide *sufficient specifics* as to why the request…is overly burdensome." (emphasis added)).

## Joseph & Kirschenbaum LLP
### Attorneys At Law

Finally, Defendants position that they are not in the "possession" of responsive documents because any response prescriptions maintained in their record keeping systems is actually the "property" of Dr. Wahid and the customers is nonsensical. If Defendants have control over the documents, they are in "possession" of them and have an obligation to produce them.

<b>Defendants' Position</b>

**Legal Standard[5]**

The False Claims Act's ("FCA") anti-retaliation provision protects employees from retaliation when an employee engages in lawful acts in furtherance of a FCA action or makes efforts to stop one or more violations of the FCA. 31 U.S.C.S. § 3730(h)(1). To state a claim for FCA retaliation, courts generally require a plaintiff to show: (1) he engaged in activity protected under the statute; (2) the employer was aware of such activity; and, (3) the employer took adverse action against him because he engaged in the protected activity. The NYFCA (N.Y. State Fin. Law § 191) follows the same standard. *Dhaliwal v Salix Pharms., Ltd.*, 752 F App'x 99, 100 (2d Cir 2019).

For the first prong, "courts in this Circuit have required a plaintiff 'to show a good faith basis, or an objectively reasonable basis, for believing that …she was investigating matters in support of a viable FCA claim." *Krause v. Eihab Human Servs.*, No. 10-cv-898, 2015 U.S. Dist. LEXIS 101820, at *16 (E.D.N.Y. Aug. 4, 2015) (*internal quotations and citations omitted*). *See, also*, *United States ex rel. Sasaki v NY Univ. Med. Ctr.*, 2012 US Dist. LEXIS 8672, at *35-36 (SDNY Jan. 25, 2012) (which held "a relator need not prevail on his or her FCA claim in order to recover for retaliation under 31 U.S.C. § 3730(h)). However, a relator is required to show a good faith basis, or objectively reasonable basis, for believing that he or she was investigating matters in support of a viable FCA case.")

"Generally, when a potential plaintiff engages in an investigation in which it would be reasonable to conclude that there is a distinct possibility that she would find evidence of an FCA violation, courts are inclined to find that the first prong of the analysis has been satisfied. Notably, § 3730(h) protects an employee's conduct even if the target of an investigation was innocent and proving a violation of the FCA is not an element of a § 3730(h) cause of action." *Krause v. Eihab Human Servs*. at*17 (*internal quotations and citations omitted*). Proving an action violation of the false claims statute is not an element of a retaliation cause of action. *NY ex rel. Khurana v. Spherion Corp.*, 511 F. Supp. 3d 455, 472 (S.D.N.Y. 2021).

Based on Plaintiff's own admission, Plaintiff is seeking information that relates to the underlying alleged fraud. While Plaintiff admits he does not have to prove the underlying fraud to prevail on his FCA claims, his discovery demands suggest an intention to do exactly that.

Plaintiff illogically contends that certain prescriptions support that Plaintiff engaged in protected activity. The link between the prescriptions requested and the protected activity is non-existent nor does not lead to the discovery of relevant information. Plaintiff's good-faith basis to believe fraud was occurring is to be based on his observations, at that time, as a supervising pharmacist. He is

---

[5] Defendants tried to limit their letter motion to three pages but were unable to do so and seek leave to exceed the page limit set forth by half a page.

JOSEPH & KIRSCHENBAUM LLP
ATTORNEYS AT LAW

required to independently articulate the basis for his belief and what steps he took to investigate at that time, based on his knowledge and observations. Plaintiff has failed to articulate how or why the production of HIPAA protected prescriptions would demonstrate that he had a subjective or objective basis to believe fraud was occurring. In other words, the production of prescription "X" for patient "Y" would not, in any way, demonstrate that Plaintiff had a reasonable basis to believe fraud was occurring. It also begs the question of where this fishing expedition ends; will the next step be Plaintiff hiring an expert to demonstrate that patient "Y" did not need prescription "X" at the time? This goes beyond what is required of Plaintiff to prove for retaliation.

***Request for Production No. 20***

Plaintiff seeks "all documents and communications related to all prescriptions written by Dr. Abdul Wahid."

As a threshold matter, Defendants did not object to providing communications relating to prescriptions written by Dr. Wahid and conducted a search for the same. Defendants did, however, object to producing all documents related to all prescriptions written by Dr. Wahid.

Plaintiff has failed to clarify which documents he is seeking and what qualifies as documents "related' to ***all*** prescriptions written by Dr. Abdul Wahid. To the extent Plaintiff's poorly worded demand seeks the prescriptions written by Dr. Wahid, Defendants do not have access to "all prescriptions written by Dr. Abdul Wahid." If Plaintiffs seek the complete prescriptions of a non-party to this case, Plaintiff can subpoena those records from that party if they wish. Documents "related" to prescriptions is also unclear. By way of example, does Plaintiff seek manufacturer warnings or drug literature related to particular medication prescribed by Dr. Wahid that happened to be filled at S&P? To this rhetorical question, Plaintiff's counsel responded "yes", if it is available. How this information would be relevant to the claims and defenses in this action is beyond imagination and underscores the point that this demand is only designed to harass and annoy. It seems to me that Plaintiff ***is*** on a fishing expedition.

To that end, substantiating a "good faith basis" **or** "objectively reasonable" belief that an employee was investigating an FCA violation does not entitle Plaintiff an opportunity to retroactively seek documents in the absence of specific allegations of misconduct pertaining to the information sought. Prescriptions written by Dr. Wahid is not evidence of fraud nor are there any allegations in the Amended Complaint that claim Dr. Wahid was not permitted to write prescriptions. If Plaintiff believes he had a good faith basis **or** objectively reasonable belief that a fraud existed relating to Dr. Wahid's prescriptions, that ***Plaintiff*** was investigating, it his burden to articulate that belief based on his knowledge ***at that time***. It is worth noting that Plaintiff was the Supervising Pharmacist at S&P during the relevant time, and he was responsible for verifying and filling prescriptions and ensuring the pharmacy compliance at all times.

Further, Plaintiff's request invokes the production of patient health information (PHI) safeguarded by HIPAA. In the instant matter, the redaction of all prescriptions written by a non-party and filled by S&P would be costly and time-consuming. The production of all prescriptions issued by Dr. Wahid is neither relevant nor material to Plaintiff's claims because Plaintiff's subjective belief that he was investigating fraud against the government is based on his personal observations as a

## Joseph & Kirschenbaum LLP
### Attorneys At Law

Supervising Pharmacist. An extensive list of prescriptions written by one prescriber and filled at S&P is not relevant. Plaintiff argues that he should be able to introduce into evidence the documents he relied on to form his good faith basis or objectively reasonable basis but in this instance the basis of his belief does not come from prescriptions but from what he allegedly observed as a Supervising Pharmacist.

Plaintiff relies heavily on the non-controlling Northern District of New York case *U.S. ex rel. Rubar v. Hayner Hoyt Corp.*, Case No. 14-cv-830, 2018 U.S. Dist. LEXIS 158824 (N.D.N.Y. Sept. 18, 2018), where the Court permits discovery of documents relating to the Plaintiff's allegations of fraud. This case can be distinguished in several ways. First, the facts of the case and the relator's proximity to the fraud were distinctly different. Secondly, discovery was permitted in large part to show a motivation for retaliation. Here, Plaintiff alleges he was retaliated because he complained about fraud, and he did so in writing and verbally. The question then becomes, are the written and verbal complaints of fraud a motivating factor for his termination. The substance of the complaint would be controlling. The Defendants in *Rubar,* cite to *Dilback v GE*, 2008 US Dist LEXIS 71829 (WD Ky Sep. 19, 2008, No. 4:00-CV-222) in support of their position, which is essentially the same as Defendants herein. "As the Supreme Court has held, proving the underlying FCA action is not an element of an FCA retaliation cause of action." *See, e.g., Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 545 U.S. 409, 416 n.1, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005). It is possible for an FCA retaliation plaintiff to engage in activity related to a viable FCA claim even if the accused is innocent. *Dilback* at *8-19.

**<u>Request for Production No. 28</u>**

*RFP No. 28*: Plaintiff seeks "all documents reflecting all prescriptions filled at Marhaba Pharmacy from 2017 to 2020, including but not limited to, documents reflecting the date of sale, pharmacist verification record (Pvrf) for patient, track alterations in Micromerchant System, received date, billing date, and dispersion date, for" eighteen patients who are specifically identified in Plaintiff's demand.

This demand is equally problematic, as it seeks a distinct set of documents related to a distinct set of patients. The redaction of patient names and other sensitive information would prove to be futile in this instance as Plaintiff has already identified these patients and is aware of at least some other personal identifiers, including the medications they were prescribed, perhaps their address, ages, and medical conditions.

"Under HIPAA, health care providers are required to protect the confidentiality of a patient's health information. *Nat'l Abortion Fed'n v. Ashcroft*, No. 03 Civ. 8695 (RCC), 2004 U.S. Dist. LEXIS 4530, 2004 WL 555701, at *3 (S.D.N.Y. Mar. 19, 22004). Protected Health Information ('PHI") is "individually identifiable health information" transmitted or maintained in electronic media or any other form. 45 C.F.R. § 160.103, *Pal v. New York Univ.*, 2007 U.S. Dist. LEXIS 45374 at *5-6. HIPAA also has a preemption provision which allows the application of state law if it is more stringent that federal law. A provider can disclose PHI without patient consent under limited circumstances including a Court Order or subpoena or discovery request if the individual whose records are requested has notice of the request, *Nat'l Abortion Fed'n,* 2004 U.S. Dist. LEXIS 4530, 2004 WL 555701, at *2. By comparison, under New York law, a medical practitioner "is

## JOSEPH & KIRSCHENBAUM LLP
#### ATTORNEYS AT LAW

prohibited from disclosing any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity," "[u]nless the patient waives the privilege." N.Y. C.P.L.R. § 4504(a), Id at *2.

Here, Plaintiff has already identified patient names and even with redactions, PHI would be disclosed or discoverable because Plaintiff, as Supervising Pharmacist, would be able to recall which prescriptions belong to which patient. Secondly, Plaintiff has not secured the consent of the patient through a HIPAA authorization. Thirdly, even if Plaintiff were to acquire this information, it would not reveal information relevant or material. Plaintiff is not in the position to discern the correctness or validity of the frequency or substance of patients' prescriptions from a third-party doctor and he must rely on information or experiences known to him at the time to substantiate his good-faith basis or objectively reasonable belief.

If Plaintiff wants to demonstrate that these particular patients were prescribed more medications than needed or billed for more prescriptions than written or picked up, he can testify based on his personal knowledge, known to him at the time of the complaint. The prescriptions requested would not reveal whether the patients were billed for prescriptions they never received, as contended by Plaintiff. Further, the only motivation for requesting these documents is to test theories of fraud after the fact which is not relevant in the FCA retaliation context. Telling is the fact that Plaintiff has not specified which patients he links to which type of fraud; only that he is seeking the information generally to surveil the information for "evidence' to confirm what could be fraud after the fact. Discovery and document demands are not designed to be used as a tool to harass Defendants. Allowing this request for production without obtaining patient consent now that their names have been disclosed would run afoul of HIPAA and New York State Law and would be highly prejudicial to Defendants.

We thank you for your careful consideration of this matter.

    Respectfully Submitted,

    *s/Michael DiGiulio*
    Michael DiGiulio

    JOSEPH & KIRSCHENBAUM, LLP
    32 Broadway, Suite 601
    New York, NY 10004
    *Attorney for Plaintiff*

    Pervez & Rehman, P.C.

    s/s Nadia M. Pervez
    Nadia M. Pervez
    6268 Jericho Turnpike, Suite 8
    Commack, NY 11725
    *Attorney for Defendants*